915 F.2d 1556
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Almerinda DA SILVEIRA, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 90-1341.
 United States Court of Appeals, First Circuit.
 July 23, 1990.
 
 Appeals from the United States District Court for the District of Rhode Island, Raymond J. Pettine, Senior District Judge.
 Stephen M. Rappoport, Rappoport, Audette, Bazar & Farley on brief, for appellant.
 Lincoln C. Almond, United States Attorney, Everett C. Sammartino, Senior Assistant United States Attorney, on brief, for appellee.
 D.R.I.
 VACATED AND REMANDED.
 Before TORRUELLA, SELYA and CYR, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant, who was born in 1930, speaks Portuguese, but very little English. She worked for many years in a luggage factory. She ceased working in April 1986 because of pain in her neck, arm, and left side of body.
 
 
 2
 Claimant was treated fairly actively in 1986 for her pain, receiving physical therapy. When her complaints persisted, she was hospitalized in late October 1986 for a myelogram. The myelogram disclosed "no significant abnormality."
 
 
 3
 In August 1987, Dr. LeClercq recounted that claimant had been seen for generalized pain on the left side of her body. Tomographic studies had been suggestive of left carpal tunnel syndrome, for which claimant had received an injection of steroids. Claimant had "improved significantly" to the point where Dr. LeClercq saw no need for further treatment for the carpal tunnel. As for claimant's other symptoms, the doctor found no atrophy, fasciculation, or weakness. Sensory examination was unremarkable. Dr. LeClercq continued as follows:
 
 
 4
 I think this lady has chronic cervical and lumbar radiculopathy for which since the myelogram is normal I do not think surgery is indicated. I also do not see need for further investigation at this point.
 
 
 5
 As I have explained to the patient she will have to learn to live with this condition as it has become chronic, but I see no reason why she could not try to return to some gainful employment.
 
 
 6
 While Dr. LeClercq felt claimant should be able to work, he did not fill out a residual functional capacity (RFC) assessment indicating what type of work, in terms of physical demands, claimant could handle.
 
 
 7
 Claimant continued to complain of pain. At the ALJ's request, claimant was examined in June 1988 by Dr. Spindell, an orthopedic specialist. Claimant recounted pain of two years duration in her neck and left side extending from her shoulder to left hand and leg. Claimant turned her head freely during conversations, turned easily on the examining table, and walked without a limp. Dr. Spindell found no spasm, atrophy, weakness, or sensory deficit. Range of motion of the upper extremities was complete. Forward flexion of the low back was limited to 70 degrees. Dr. Spindell concluded that claimant showed "no objective evidence of any significant orthopedic disability referable to her neck, low back, and extremeties." He completed an RFC indicating that during an 8 hour day claimant could sit for 4 hours (but no more than 3 hours sitting at one time), stand 2, and walk 2. She could frequently lift and carry up to 20 pounds and occasionally lift or carry up to 50 pounds. She could occasionally bend, squat, crawl, or reach.
 
 
 8
 In her application for disability benefits, claimant described her past work as a machine operator at a luggage factory. She had operated various machines, mainly footpresses, similar to sewing machines. At the hearing, claimant elaborated. She had performed a variety of tasks in the 22 years she had been at the luggage factory. One job was to open boxes containing goods from Japan and determine whether anything needed to be fixed. This job would be done for 2 or 3 days at a time. It entailed bending and lifting 40 to 50 pounds. Part of the time claimant was sitting and other times standing. Other work as a machine operator attaching buckles to suitcases required lifting 15 or 16 pounds and was performed mostly in a seated position. Another job at the factory claimant had done was making bows and attaching them. Minimal lifting was involved, but claimant had to be on her feet all day (or until that type of work ran out). In short, claimant had done different jobs depending upon the needs of the factory.
 
 
 9
 Claimant testified that her pain had continued and that she could no longer sit more than 20 minutes at a time, lift, or use her left arm. She took prescription tylenol at night and over the counter tylenol during the day.
 
 
 10
 A vocational expert labelled the first task claimant had described--"returned goods," he called it--as medium and unskilled work and the machine operator job as light and unskilled.
 
 
 11
 The ALJ found that claimant's only physical limitation was an inability to lift over 40[1] pounds. Since the VE had described claimant's machine operator job as light, and as light work entails lifting no more than 20 pounds, the ALJ concluded claimant could return to her past work and therefore denied disability benefits.
 
 
 12
 The ALJ appears to have credited Dr. Spindell's report and RFC. We conclude that the ALJ was warranted in doing so. Claimant disputes, however, that Dr. Spindell's RFC supports the conclusion that claimant can return to her past work.
 
 
 13
 Whether claimant has the functional capacity to return to her past work is particularly significant because, in view of her age (advanced--55 or over), illiteracy in English, and unskilled past work experience, were claimant limited to light work, but could not do her past work, then the grid would direct a finding of disabled. See 20 C.F.R. Pt. 404 Subpt. P, App. 2, Sec. 202.01.[2]
 
 
 14
 Claimant, according to her testimony, performed different functions at the luggage factory as required by the factory's needs of the moment, switching from one task to another when the work on the first ran out. The VE described one of these tasks as light and one as medium. The ALJ concluded that Dr. Spindell's RFC was consistent with an ability to do light work and that therefore claimant could return to the machine operator position, the one the VE had labelled as light. The ALJ did not directly address whether claimant could do the medium aspect of her former work (inspecting returned goods), but the negative implication of his report may be that he had some doubt on that score.
 
 
 15
 The difficulty is that it is not at all apparent that if claimant has the capacity to do the machine operator job--but not the other tasks she performed at the luggage factory--she can return to her former work. The VE was not asked--and did not address--the matter, and the tenor of claimant's testimony was that factory workers were required to work where needed. Whether jobs limited solely to buckle attachment (the machine operator job claimant described) or something similar exist is not clear.
 
 
 16
 Furthermore, in her disability application, claimant described her work as requiring "constant" bending and reaching, whereas the Secretary's doctor said claimant could only "occasionally" bend or reach. The VE was not asked and did not explain how much bending and reaching would normally be required in claimant's line of work. In a similar vien, claimant said one of the tasks she had performed had required constant standing. Dr. Spindell, however, limited her to 2 hours standing. These discrepancies need to be specifically addressed and resolved by the ALJ and VE and a determination made whether the functional limitations noted by Dr. Spindell, the Secretary's consultant, are consistent with an ability to return to claimant's former type of work.
 
 
 17
 Particularly in the borderline situation presented here, where the grid may end up directing a finding of disabled, we think further development along the lines outlined above is needed.
 
 
 18
 The judgment of the district court is vacated and the case is remanded with directions to remand to the Secretary for further proceedings consistent with this opinion.
 
 
 
 [1]
 In the narrative portion of his report, the ALJ limited claimant to lifting 40 pound. In the findings portion, the limit was stated as 50 pounds. In view of claimant's testimony that she sometimes had to lift 50 pounds, the differential could make a difference. Dr. Spindell said claimant could occasionally lift 50 pounds
 
 
 [2]
 To be sure, Dr. Spindell, said claimant could lift up to 50 pounds, a lifting capacity at the "medium" work exertional level. See 20 C.F.R. Sec. 404.1567(c). And, if claimant had the ability to perform a full range of medium work, grid rule 203.11 (advanced age, limited or less education, unskilled past work, RFC for medium work) would direct a finding of not disabled. But, an ability to perform a full range of medium work requires the capacity to stand or walk approximately 6 hours in an 8 hour work day. "In most medium jobs, being on one's feet for most of the workday is critical." See SSR 83-10. Dr. Spindell, however, limited the total of walking and standing to 4 hours